## BOSTON AND MAINE RAILROAD v. OLIVER, AND SALMON FALLS BANK AND MORTON, Trustees.

A banking company is not concluded by an entry upon their books of a credit to the principal debtor. They may show that the entry was made by a mistake, and that no such deposit was in fact made on his account.

A trustee is entitled to set off or retain any money due to him at the time of the disclosure, upon a contract existing prior to the action, however contingent or uncertain might have been the liability upon which the money has since become due, at the time the trustee suit was brought.

THIS is an action of assumpsit, brought by the plaintiffs against Oliver, the defendant, in which the Salmon Falls Bank and Morton are summoned as trustees of Oliver.

The following facts appear upon the disclosures made by the president of the bank, and by Morton, and the accompanying papers.    Mr. Morton is the cashier of the bank, and one of the sureties of Oliver, the principal defendant, for his accounting for and paying over to the plaintiffs all moneys he should receive on their account; he being a ticket master and freight collector on their road.    On the 23d of March, 1852, Oliver came into the bank, and settled with Morton a book account Morton had against him; and paid him the balance, twenty-one dollars. Oliver then threw down upon the bank counter a roll of bank bills, saying, " There is six hundred dollars; take that." Morton asked him if he would take a bank-book, or a certificate of deposit, and he said, " No, no; do you take it and keep it till I call for it," and immediately left the bank, and on the same day absconded.    Morton, without knowing or suspecting his intention to abscond, or that he was in arrear or indebted to the Railroad, and supposing that Oliver only wished him to take care of the money for a few days, without any direction from Oliver, and as said Morton now believes contrary to his intention, entered said six hundred dollars as a deposit to his credit on the books of the bank, and it so remained without the cashier's hearing or thinking any thing about it, or about Oliver, till April 1st, 1852, when he was informed that Oliver had absconded, and that he was greatly indebted, and in arrear to the Railroad.

After it was known that Oliver had absconded, the Railroad alleged that he had received more than two thousand dollars on their account, and for which he was indebted to them, and called upon Morton to pay the amount of his bond, which he did, and the bond was discharged on the 9th of April.

Upon learning that Oliver was gone, Morton, upon running over in his mind, as he testifies, the circumstances, and what Oliver said to him when he left the six hundred dollars with him, became satisfied that Oliver left said six hundred dollars with the intent and design that he should apply the same to the payment, satisfaction and discharge of the bond, and thus save himself and

the other sureties thereon, harmless and free from loss by reason of his breach of the condition thereof, or otherwise : and that Oliver did not intend that the money should be deposited or put into said bank to his credit, or in any way; and that he, the said Morton, had put it there against Oliver's intention, as he knew he had without his direction. He, therefore, on the first day of April, 1852, procured a meeting of a quorum of the directors of the bank, and stated to them substantially these facts and circumstances, and requested their leave to withdraw the said six hundred dollars, and they authorized it to be done by a vote recognizing it as a deposit made in the name of Oliver by mistake. These were the facts as stated by Morton ; and the officer who disclosed on behalf of the bank declared his conviction that the facts were as they were stated by Morton, and that the deposit was made in Oliver's name by mistake.

The court below ruled that neither of the trustees could be charged upon the disclosures, and the plaintiffs excepted.

*Christie* and *Kingman*, for the trustees.

There is no possible ground on which the Salmon Falls Bank can be held as trustee on their disclosure ; and we do not understand that the plaintiff contends for this. The six hundred dollars that was entered on the books of the bank by mistake, was withdrawn from the bank by the person who put it there, before the service of the trustee process ; and there has never been any thing belonging to the defendant in their hands or possession since.

Nor can Morton be held as trustee without overruling the whole tenor of the Massachusetts decisions on this subject, and subjecting the trustee to gross wrong and hardship. We contend that the evidence is conclusive, that Oliver put the six hundred dollars into Morton's hands to protect him and his co-sureties on the bond to the plaintiffs, and that they had a right to appropriate it for that purpose. But however this may be, there can be no doubt that the trustee, Morton, being under *a contingent liability* on account of the defendant Oliver, by reason of the bond,

which liability *became actual* before the trustees' disclosure, may retain any funds in his hands to indemnify himself.

This doctrine is laid down without qualification in Cushing's Trustee Process, page 65, and is abundantly supported by the authorities cited, *Boston Co.* v. *Mortimer*, 7 Pick. 166; *Ripley* v. *Severance*, 6 Pick. 474; *Curtis* v. *Norris*, 8 Pick. 280 ; and it would be a very great hardship on this trustee to compel him to pay up the full amount of the bond to the plaintiffs, as he has already done, and then take from him the only money by which he can partially indemnify himself.

*Wheeler*, for the plaintiff.

The Salmon Falls Bank admits, by its disclosure, that the money of the principal defendant has come to its possession ; and in such case the trustee is to be charged, unless, by its disclosure or other sufficient evidence, it clearly discharges itself. *Wright* v. *Foord*, 5 N. H. 178; *Giddings* v. *Coleman and Trustee*, 12 N. H. 156. Have they discharged themselves ? Aside from the supposition and opinion of Morton, which is founded no doubt more on his desire to secure and protect his liability upon his bond than upon any fair construction which the facts warranted, and which are not evidence, and should not have been given, the facts disclosed are entirely insufficient to protect the bank in allowing Morton to withdraw the money.

Morton was cashier of the bank, and as such received the money. He so understood it when he received it, else he would not, as he did immediately, enter the 'money upon the books of the bank to the credit of said Oliver.

Having thus deposited the money, agreeably to what he understood to be the intention of Oliver, and agreeably to Oliver's direction to him, his duty and authority in relation to the money was at an end. He had no authority to draw upon the bank for the money, nor had the bank any right to pay the money but upon the order of Oliver. The bank was then answerable for the money, and Oliver could have sustained an action against them to recover it.

If Morton and the other sureties had desired to protect themselves in their liability upon their bond, they should have procured a discharge of the bond, commenced their action against Oliver, and summoned the bank as his trustee.

But if the court should hold that the bank acted right, and they are protected in paying this money to Morton, Morton should be charged as trustee in this suit. It was not a pledge. He did not receive it as such, because he admits he immediately placed it in the bank to the credit of Oliver. By that application he was bound and could not afterwards change it. *White* v. *Trumbull,* 3 Greenl. 314; *Hilton* v. *Burley,* 2 N. H. 123; Chitty on Contracts 753, note.

We can see no way in which he can retain this money, unless he can be allowed to set off what he afterwards paid to discharge his liability on the bond to the railroad. But this he cannot do, because it was not at the time a subsisting debt, due at the date of the plaintiff's suit, and upon which an action then could be sustained. *Varney* v. *Brewster,* 14 N. H. 49; 5 U. S. Dig. 758, § 15.

The money paid to discharge the bond was paid as well for the other sureties as for Morton. The set-off, then, is not between the same parties.

Morton's liability, after contribution from the other sureties, was only two hundred dollars, and that is all in any event he could be allowed to set-off.

BELL, J. Upon the facts presented by the disclosure of the bank, the question arises, whether the credit given to Oliver could be cancelled, and the money paid to another person, without the assent of Oliver, so as to discharge the bank; and we think there can be no doubt that the proper course was taken both by the cashier and the directors. The cashier has the general power to correct any erroneous entries made by him upon the books of the bank; the effect of any erasures or counter-charges being dependent upon the facts as they may appear upon the proof. And we take it to be the every day practice of

book-keepers, whenever they find an erroneous charge or credit, to correct it by a counter-charge. As the counter-charge in this case might affect the interests of the bank in a case where the cashier had personal interests, it was fit that he should lay the case before the board of directors, and seek their sanction for what he did ; and it was proper for them to allow the error to be corrected, when they were satisfied it was such.

The only reasonable conclusion upon the evidence was that to which the directors came, that the money was paid to the cashier personally, and no deposit in the bank was authorized or intended.

If the books had remained without any counter entry, the bank would not be chargeable. The book contains their written admission that they had received this deposit on account of Oliver, and had placed it to his credit. In their disclosure they say the same thing, but they now say, and, notwithstanding these admissions, they have a right to say, We are now satisfied that the whole entry was a mistake ; the money was not in fact paid to the bank, nor deposited to his credit by his direction ; and they now declare under oath they owe Oliver nothing. They lay before the court the facts on which they rely to justify this declaration, and we think their conclusion is correct. They are not concluded by the entry on their books, or their admission in the disclosure, to show the facts as they really existed.

Morton, the cashier, cannot be charged. He admits the receipt of six hundred dollars from Oliver. He states his belief, formed after he learned that Oliver had absconded, contrary to his impression when he received the money, that it was placed in his hands for the purpose of indemnifying him and his co-sureties on Oliver's bond against the liability to which Oliver knew, but Morton did not suspect, they must be subject, as soon as it was known that he was in arrears to his employers, and had absconded. He states the facts upon which he rests his belief, and his conclusions seem to us to be reasonable. If that purpose had been stated, the money would have constituted a pledge, which he would in any event have had a right to apply to the

purpose for which he received it. His right so to apply it would not be affected by a trustee process. The money was, however, merely placed in Morton's hands to be kept till he called for it. It was not in fact pledged for any purpose. This trustee alleges that he is not chargeable for this money, because he was bound to pay and has paid the same amount as a surety for Oliver on his official bond to the plaintiffs. It is contended, however, that as there was, at the time of the commencement of the suit, no subsisting debt due to the trustee, upon which he could then maintain an action, he cannot be allowed a set-off on that account. The cases of *Varney* v. *Brewster*, 14 N. H. 49, and *Cox* v. *Cooper*, 3 Ala. 256, cited in support of this position, are not cases of foreign attachment, but relate to set-offs in actions at law, which stand on ground materially different from the equitable set-off allowed to trustees. The cases cited for the defendant show that in Massachusetts a trustee cannot be charged for a debt due the principal debtor, where it appears that he has been compelled before the disclosure to pay a greater sum as surety for the principal. In the first of the cases cited the distinction between the case of a set-off at law and in a trustee process is distinctly recognized; though it is said that, by the practice there, the rights of a defendant would be protected at law, by allowing continuances of the action until a set-off could be made of the defendant's judgment recovered in a cross action. A similar practice exists here, in cases resting upon like reasons. *Hutchins* v. *Riddle*, 12 N. H. 464.

The principle of these decisions in Massachusetts has been repeatedly recognized by this court. In *White* v. *Richardson and Trustee*, 12 N. H. 93, the principal debtor labored for the trustee, upon an agreement that the latter should retain the proceeds of his labor as an indemnity against a liability of the trustee as bail for the principal. Before the disclosure the trustee was compelled to pay the amount as bail, and it was held that the trustee could not be charged. The claim of the trustee was merely a contingent liability, though there was an express agreement, which does not exist here, that the

fund should be held as an indemnity against it. In *Boardman* v. *Cushing and Trustees*, 12 N. H. 105, the same principle was recognized, and it was held that the express pledge made no difference. The trustee has the right of set-off, or to retain for all demands due him from the principal, contracted before the service of the process, and payable at the time of judgment; and it is said that in some cases the court interpose beyond that. In *Swamscot Machine Co.* v. *Partridge and Trustees*, 5 Fost. 369, this question again arose, and the rule is laid down thus by the learned judge who delivered the opinion of the court: " That trustees may retain any sums which they are entitled to receive at the hands of the principal defendant, at the date of the disclosure, upon claims or contracts existing prior to the action, can not admit of doubt." In fact, a trustee is entitled to retain or to set off, against the debt which he may owe the principal, any demand which he might set off, or of which he might avail himself by any of the modes allowed either by the common or statute law, if the action was brought by the defendant himself, or if the proceedings were wholly between the trustee and principal defendant; and the case of *Boston Type Co.* v. *Mortimer* is cited as sound law. The principle must, therefore, be regarded as settled here, and the trustees must be discharged.